# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

**ALFRED FRANCO, MUTSUKO
SAKO, CHRISTOPHER SOLDO,
JACQUELINE READER AND
LYNDA SPIVEY**

   *Plaintiffs*

**VERSUS**


**FORD MOTOR COMPANY**

  *Defendant*

**CASE NO.: 2:19-cv-10606**

**COMPLAINT FOR
RESTITUTION,
DAMAGES AND CIVIL
PENALTY**


**JURY TRIAL DEMANDED**

---

## PLAINTIFFS' ORIGINAL COMPLAINT FOR RESTITUTION, DAMAGES,  AND CIVIL PENALTY

NOW INTO COURT, through undersigned counsel, comes the plaintiffs, ALFRED FRANCO, MUTSUKO SAKO, CHRISTOPHER SOLDO, JACQUELINE READER and LINDA SPIVEY,  who are all competent majors and represent the following:

## JURISDICTION AND VENUE

1. This Court has original jurisdiction over this action  pursuant to 28 U.S.C. 1331 and 1332(a)(1). In addition, under 28U.S.C. § 1367, this Court may exercise supplemental jurisdiction over the state law claims  because all of the claims

-1-

are derived from a common nucleus of operative facts and are such that Plaintiffs would ordinarily expect to try them in one judicial proceeding.

2. This Court has personal jurisdiction over the defendants because they have sufficient minimum contacts in the Eastern District of Michigan and intentionally avail themselves to the jurisdiction of Michigan by virtue of their extensive business dealings and transactions within this State and the fact that their corporate headquartes are located in Michigan.

3. Venue properly lies in the United States District Court for the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(b)(1).

## CUMULATION

4. All of the actions cumulated herein are mutually consistent and employ the same form of procedure.

5. There is a community of interest between the parties joined, namely that each Plaintiff purchased a Ford Focus that was manufactured by the Defendant that were equipped with the same DPS6 or PowerShift transmission; that possessed the same transmission defect; that caused the same complaints and/or "symptoms" related with the defect and that the Defendant knew at the time of sale that the subject vehicles were equipped with the defective transmission and failed to disclose same at the time of sale.

## CONDITIONS PRECEDENT

6.      All conditions precedent have been performed or have occurred.

## PARTIES

### Plaintiff Alfred Franco

7.      Plaintiff Alfred Franco is a California resident, who resides in the County of Riverside, Eastvale, California.

8.      On or about May 20, 2012, Plaintiff purchased a new 2012 Ford Focus from Sunrise Ford, an authorized Ford dealer in Fontana, California. His vehicle was equipped with an optional PowerShift Transmission that cost him $1,095.00.

9.      Plaintiff purchased his vehicle primarily for personal, family, or household use. Ford manufactured, sold, distributed, advertised, marketed, and warranted the vehicle.

10.      Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase his vehicle. Prior to purchasing his vehicle, Plaintiff researched the vehicle on Ford's official website and subsequently test drove the vehicle. Plaintiff spoke to several employees of the selling dealership, including the salesperson that assisted him in his decision to purchase his vehicle.

11.      Plaintiff did not know and was never informed by Ford prior to purchasing his vehicle that it had a defective transmission.

12.     Had Ford disclosed its knowledge of the Transmission Defect, and the fact that it posed a safety concern prior to and/or at the time Plaintiff purchased his 2012 Ford Focus, the Plaintiff would NOT have purchased the subject vehicle. In fact, Ford's fraudulently induced the Plaintiff's consent to purchase his vehicle when the failed and/or refused to disclose such material information from him. Surely, a reasonable person, including the Plaintiff, would not have paid the purchase price charged by Ford, had he known that the PowerShift Transmission is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle.

13.     Plaintiff's vehicle continues to exhibit all of the problems he had previously complained about to authorized Ford dealer.

14.     Ford's authorized dealership has failed to adequately repair Plaintiff's vehicle. Despite these repair attempts by Ford and its dealers, Plaintiff's transmission continues to shift erratically, and cause bucking, kicking, jerking, harsh engagement, delayed acceleration, lurching, erratic shifting, and a delay in downshifts.

15.     At all times, Plaintiff, has driven his vehicle in a foreseeable manner and in the manner in which it was intended to be used.

16.    Due to Ford and their agents fraudulent concealment of the defective transmission, as set forth herein, Alfred Franco did not discover that the defects in his vehicle's transmission were due to a manufacturing defect and/or manufacturing design flaw until or about August of 2017.

17.    Plaintiff, Alfred Franco, executed a valid opt-out from the Ford Class Action settlement in the matter of *Vargas, et al. v. Ford Motor Co.*, Case No. 2:12-cv-8388 (Central District of California) on September 1, 2017.

### Plaintiff Mutsuko Sako

18.    Plaintiff, Mutsuko Sako, is a California resident, who resides the County of Sacramento, Elk Grove, California.

19.    On or about January 10, 2012, Plaintiff purchased a new 2012 Ford Focus from Elk Grove Ford, an authorized Ford dealer in Elk Grove, California. His vehicle was equipped with an optional PowerShift Transmission that cost him $1,095.00.

20.    Plaintiff purchased his vehicle primarily for personal, family, or household use. Ford manufactured, sold, distributed, advertised, marketed, and warranted the vehicle.

21.    Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase his vehicle. Prior to purchasing his

vehicle, Plaintiff researched the vehicle on Ford's official website and subsequently test drove the vehicle. Plaintiff spoke to several employees of the selling dealership, including the salesperson that assisted him in his decision to purchase his vehicle.

22.    Plaintiff did not know and was never informed by Ford prior to purchasing his vehicle that it had a defective transmission.

23.    Had Ford disclosed its knowledge of the Transmission Defect, and the fact that it posed a safety concern prior to and/or at the time Plaintiff purchased his 2012 Ford Focus, the Plaintiff would NOT have purchased the subject vehicle. In fact, Ford's fraudulently induced the Plaintiff's consent to purchase his vehicle when the failed and/or refused to disclose such material information from him. Surely, a reasonable person, including the Plaintiff, would not have paid the purchase price charged by Ford, had he known that the PowerShift Transmission is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle.

24.    Plaintiff's vehicle continues to exhibit all of the problems he had previously complained about to authorized Ford dealer.

25.    Ford's authorized dealership has failed to adequately repair Plaintiff's vehicle. Despite these repair attempts by Ford and its dealers, Plaintiff's transmission

continues to shift erratically, and cause bucking, kicking, jerking, harsh engagement, delayed acceleration, lurching, erratic shifting, and a delay in downshifts.

26. At all times, Plaintiff, has driven his vehicle in a foreseeable manner and in the manner in which it was intended to be used.

27. Due to Ford and their agents fraudulent concealment of the defective transmission, as set forth herein, Mutsuko Sako did not discover that the defects in his vehicle's transmission were due to a manufacturing defect and/or manufacturing design flaw until or about August of 2017.

28. Plaintiff, Mutsuko Sako, executed a valid opt-out from the Ford Class Action settlement *Vargas, et al. v. Ford Motor Co.*, Case No. 2:12-cv-8388 (Central District of California) on September 1, 2017.

**Plaintiff Christopher Soldo**

29. Plaintiff Christopher Soldo is a California resident, who resides in the County of Los Angeles, Burbank, California.

30. On or about September 27, 2011, Plaintiff purchased a new 2012 Focus from Ford Lincoln, an authorized Ford dealer in Fairfield, California. His vehicle was equipped with an optional PowerShift Transmission that cost him $1,095.00.

31. Plaintiff purchased his vehicle primarily for personal, family, or household use. Ford manufactured, sold, distributed, advertised, marketed, and

warranted the vehicle.

32.     Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase his vehicle. Prior to purchasing his vehicle, Plaintiff researched the vehicle on Ford's official website and subsequently test drove the vehicle. Plaintiff spoke to several employees of the selling dealership, including the salesperson that assisted him in his decision to purchase his vehicle.

33.     Plaintiff did not know and was never informed by Ford prior to purchasing his vehicle that it had a defective transmission.

34.     Had Ford disclosed its knowledge of the Transmission Defect, and the fact that it posed a safety concern prior to and/or at the time Plaintiff purchased his 2012 Ford Focus, the Plaintiff would NOT have purchased the subject vehicle. In fact, Ford's fraudulently induced the Plaintiff's consent to purchase his vehicle when the failed and/or refused to disclose such material information from him. Surely, a reasonable person, including the Plaintiff, would not have paid the purchase price charged by Ford, had he known that the PowerShift Transmission is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle.

35.     Plaintiff's vehicle continues to exhibit all of the problems he had

previously complained about to authorized Ford dealer.

36.     Ford's authorized dealership has failed to adequately repair Plaintiff's vehicle. Despite these repair attempts by Ford and its dealers, Plaintiff's transmission continues to shift erratically, and cause bucking, kicking, jerking, harsh engagement, delayed acceleration, lurching, erratic shifting, and a delay in downshifts.

37.     At all times, Plaintiff, has driven his vehicle in a foreseeable manner and in the manner in which it was intended to be used.

38.     Due to Ford and their agents fraudulent concealment of the defective transmission, as set forth herein, Christopher Soldo did not learn that the defects in his vehicle's transmission were due to a manufacturing defect and/or manufacturing design flaw until or about July of 2017.

39.     Plaintiff, Christopher Soldo, executed a valid opt-out from the Ford Class Action settlement *Vargas, et al. v. Ford Motor Co.*, Case No. 2:12-cv-8388 (Central District of California) on July 30, 2017.

## Plaintiff Jacqueline Reader

40.     Plaintiff, Jacqueline Reader, is a Texas resident, who resides in the County of Bowie, Texarkana, Texas.

41.     On or about March 29, 2014, Plaintiff purchased a  2012 Ford Focus from Gildner Autoplex, Inc., an authorized Ford dealer in Arkadelphia, Arkansas.

Her vehicle was equipped with an optional PowerShift Transmission that cost her $1,095.00.

42.    Plaintiff purchased her vehicle primarily for personal, family, or household use. Ford manufactured, sold, distributed, advertised, marketed, and warranted the vehicle.

43.    Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase her vehicle. Prior to purchasing her vehicle, Plaintiff researched the vehicle on Ford's official website and subsequently test drove the vehicle. Plaintiff spoke to several employees of the selling dealership, including the salesperson that assisted her in her decision to purchase the vehicle.

44.    Plaintiff did not know and was never informed by Ford prior to purchasing her vehicle that it had a defective transmission.

45.    Had Ford disclosed its knowledge of the Transmission Defect, and the fact that it posed a safety concern prior to and/or at the time Plaintiff purchased his 2012 Ford Focus, the Plaintiff would NOT have purchased the subject vehicle. In fact, Ford's fraudulently induced the Plaintiff's consent to purchase his vehicle when the failed and/or refused to disclose such material information from him. Surely, a reasonable person, including the Plaintiff, would not have paid the purchase price charged by Ford, had he known that the PowerShift Transmission is prone to

premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle.

46.     Plaintiff's vehicle continues to exhibit all of the problems she had previously complained about to authorized Ford dealer.

47.     Ford's authorized dealership has failed to adequately repair Plaintiff's vehicle. Despite these repair attempts by Ford and its dealers, Plaintiff's transmission continues to shift erratically, and cause bucking, kicking, jerking, harsh engagement, delayed acceleration, lurching, erratic shifting, and a delay in downshifts.

48.     At all times, Plaintiff, has driven her vehicle in a foreseeable manner and in the manner in which it was intended to be used.

49.     Due to Ford and their agents fraudulent concealment of the defective transmission, as set forth herein, Jacqueline Reader did not learn that the defects in her vehicle's transmission were due to a manufacturing defect and/or manufacturing design flaw until or about April of 2017.

50.     Plaintiff, Jacqueline Reader, executed a valid opt-out from the Ford Class Action settlement *Vargas, et al. v. Ford Motor Co.*, Case No. 2:12-cv-8388 (Central District of California) on August 31, 2017.

**Plaintiff Lynda Spivey**

51.     Plaintiff Lynda Spivey is a Texas resident, who resides in the County of Harris, Houston, Texas.

52.     On or about February 27, 2013, Plaintiff purchased a new 2013 Ford Focus from Champion Ford, an authorized Ford dealer in Katy, Texas.  Her vehicle was equipped with an optional PowerShift Transmission that cost her $1,095.00.

53.     Plaintiff purchased her vehicle primarily for personal, family, or household use. Ford manufactured, sold, distributed, advertised, marketed, and warranted the vehicle.

54.     Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase her vehicle. Prior to purchasing her vehicle, Plaintiff researched the vehicle on Ford's official website and subsequently test drove the vehicle. Plaintiff spoke to several employees of the selling dealership, including the salesperson that assisted her in her decision to purchase the vehicle.

55.     Plaintiff did not know and was never informed by Ford prior to purchasing her vehicle that it had a defective transmission.

56.     Had Ford disclosed its knowledge of the Transmission Defect, and the fact that it posed a safety concern prior to and/or at the time Plaintiff purchased his 2012 Ford Focus, the Plaintiff would NOT have purchased the subject vehicle. In

fact, Ford's fraudulently induced the Plaintiff's consent to purchase his vehicle when the failed and/or refused to disclose such material information from him. Surely, a reasonable person, including the Plaintiff, would not have paid the purchase price charged by Ford, had he known that the PowerShift Transmission is prone to premature internal wear and failure, that it suffers from transmission slips, bucking, kicking, jerking, harsh engagement, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle.

57.    Plaintiff's vehicle continues to exhibit all of the problems she had previously complained about to authorized Ford dealer.

58.    Ford's authorized dealership has failed to adequately repair Plaintiff's vehicle. Despite these repair attempts by Ford and its dealers, Plaintiff's transmission continues to shift erratically, and cause bucking, kicking, jerking, harsh engagement, delayed acceleration, lurching, erratic shifting, and a delay in downshifts.

59.    At all times, Plaintiff, has driven her vehicle in a foreseeable manner and in the manner in which it was intended to be used. Plaintiff, Alfred Franco, is a competent major who resides in Eastvale, California and who is the owner of a 2012 Ford Focus that possesses the defective DPS6 or PowerShift transmission as set forth herein.

60.    Due to Ford and their agents fraudulent concealment of the defective

transmission, as set forth herein, Lynda Spivey did not learn that the defects in her vehicle's transmission were due to a manufacturing defect and/or manufacturing design flaw until or about April of 2017.

61.   Plaintiff, Lynda Spivey, executed a valid opt-out from the Ford Class Action settlement *Vargas, et al. v. Ford Motor Co.*, Case No. 2:12-cv-8388 (Central District of California) on August 31, 2017.

## **Defendant**

62.   Defendant, Ford Motor Company (hereinafter sometimes referred to as "Ford"), is a corporation organized and in existence under the laws of the State of Delaware. Ford Motor Company's Corporate Headquarters is located at 1 American Road, Dearborn, Michigan, 48126. Ford Motor Company designs and manufactures motor vehicles, parts, and other products for sale in the United States, Ford Motor Company is the warrantor and distributor of the Plaintiffs' vehicles.

63.   At all relevant times, Defendant was and is engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, and/or selling automobiles and motor vehicle components throughout the United States.

## **FACTS**

64.   Each of the Plaintiffs' vehicles is equipped with a DPS6 transmission otherwise known as the "PowerShift Transmission" and  is a $1,095.00 option for the

vehicles in question.

65. Ford designed and marketed its "PowerShift Transmission" as an advanced and fuel-efficient alternative to a traditional manual or automatic transmission and offered it as the sole "Automatic" option in the vehicles in question.

66. Ford's Powershift Transmission, while referred to as an "automatic," is actually a set of computerized manual transmissions. It lacks a torque converter, instead using two "dry" clutches to directly engage and disengage the engine with and from the transmission. Whereas similar "automated manual" transmissions on the market use "wet" clutches bathed in oil, Ford's Powershift Transmission clutches lack the oil pumps and other components of a wet clutch system, and instead operate "dry."

67. Ford designed the vehicles in qestion computerized "automated manual" transmissions in an effort to meet heightened governmental and consumer expectations for fuel economy, performance, and efficiency. According to Ford's own press release, dated March 10, 2010, "PowerShift with dry-clutch facings and new energy-saving electromechanical actuation for clutches and gear shifts saves weight, improves efficiency, increases smoothness, adds durability and is sealed with low-friction gear lubricant for the life of the vehicle. This transmission requires no regular

maintenance." [1]

68.     Ford's PowerShift Transmission has numerous problems and safety issues that rendering the Plaintiff's vehicle inoperable and/or inconvenient and/or unsafe to drive.

69.     The Transmission Defect causes unsafe conditions, including, but not limited to, the vehicle suddenly lurching forward, sudden acceleration, delayed acceleration, and sudden loss of forward propulsion. These conditions present a safety hazard because they severely affect the driver's ability to control the car's speed, acceleration, and deceleration. The Transmission Defect can cause the vehicle to fail to downshift and decelerate when the brakes are depressed.

70.     On information and belief, the Transmission Defect also causes premature wear to the PowerShift Transmission's clutch plates and other components, which can result in premature transmission failure and requires expensive repairs, including replacement of the transmission and its related components.

71.     At the time of manufacture the Defendant knew or should have known that the vehicles in question and the PowerShift Transmission was defective in its

---

[1]*See* PRNewswire.com "PowerShift Transmission Production Begins, Driving Ford Small Car Fuel Economy Leadership," http//www.prnewswire.com/news-release/powershift-transmission-production-begins-driving-ford-small-car-fuel-economy-leadership-89373007.html (last visited February 4,2015).

design and/or manufacture and that adversely affects the drivability of the vehicle and causes safety hazards.

72.    Plaintiffs are informed and believe and based thereon allege that prior to the sale of the vehicle, Defendant knew, or should have known, about the Transmission Defect through its exclusive knowledge of non public, internal data about the Transmission Defect, including: pre-release testing data; early consumer complaints about the Transmission Defect to Defendant's dealers who are their agents for vehicle repairs; warranty claim data related to the defect; aggregate data from Ford's dealers; consumer complaints to the National Highway Traffic Safety Administration ("NHTSA") and resulting notice from NHTSA; dealership repair orders; testing conducted in response to owner or lessee complaints; TSBs applicable to the vehicles; the existence of the defect in the substantially identical European and Australian model vehicles; and other internal sources of aggregate information about the problem. Nevertheless Defendant has actively concealed and failed to disclose this defect to Plaintiffs at the time of purchase or lease and thereafter.

73.    The Ford Fiesta and Ford Focus have the same or substantially identical optional PowerShift Transmission, and the Transmission Defect is the same for both vehicles. In fact, the PowerShift Transmission in the vehicles in question is universally referred to by Ford as the "DPS6 automatic transmission."

74.     Before offering the vehicle for sale in the United States, Ford offered the same vehicles, equipped with a similar dual-clutch transmission, in Europe and Australia. Although the American version utilizes dry-clutches as opposed to the European and Australian version's wet-clutches, Ford acknowledged that the transmission offered for sale in the United States is "derivative" of the design from the European and Australian models. [2] European and Australian versions of the dual-clutch transmission suffered from similar defects known to Ford as alleged herein.

75.     On information and belief, despite developing and patenting the THF technology and spending approximately 6,000 man-hours of computer-aided mathematical modeling, simulation and analysis of engine speeds, torque and clutch capacity as well as spending over $550 million to build a new transmission manufacturing facility with Getrag in Mexico to produce the PowerShift Transmission, Ford is now canceling the PowerShift program many years prior to its estimated end date.

76.     As a result of the Transmission Defect, in 2010 and 2011, Ford issued several TSBs to its dealers in the United States, but not its customers[3], acknowledging

---

[2]*See* Autoblog.com. "Ford officially announces dual clutch PowerShift gearbox for 2010," http://www.autoblog.com/2009/01/21/ford officially-announces-dual-clutch-powershift-gearbox-for-201 (last visited February 4, 2015).

[3]Some, but not all, service bulletins are available through the website for the Office of Defect Investigations of the National Highway Traffic Safety Administration.

problems in the PowerShift Transmission. For example, Ford's TSB from September 2010, covering the 2011 Ford Fiesta, informed dealers of "concerns such as no engagement or intermittent no engagement in Drive or Reverse when shifting from Park to Drive or Reverse, grinding noise during engagement, and/ or a check engine light with transmission control module (TCM) diagnostic trouble cod...."

77.     Similarly, Ford's TSB released on January 1, 2011, covering the 2011 Ford Fiesta with the PowerShift Transmission, informs dealers of problems with the PowerShift Transmission causing "a loss of power, hesitation, surge, or lack of throttle response while driving."

78.     Throughout 2011, Ford continued to issue various TSBs covering the Ford Fiesta and Ford Focus vehicles which advised dealers of the continuing transmission problems. For example, a Ford TSB released in September 2011 advised dealers to reprogram the transmission computer if 2011 Ford Fiesta owners complained about "hesitation when accelerating from a low speed after coast down, harsh or late 1-2 upshift, harsh shifting during low-speed top-in or tip-out maneuvers and/or engine r.p.m. flare when coasting to a stop"

79.     Because Ford will not notify consumers that the PowerShift Transmission is defective, Plaintiffs (as well as members of the general public), are subjected to dangerous driving conditions that often occur without warning.

80.    The alleged Transmission Defect was inherent and present in each Plaintiffs' vehicle at the time of sale.

81.    Ford knew about and concealed the Transmission Defect present in every vehicle, along with the attendant dangerous safety and driveability problems, from Plaintiffs at the time of sale, lease, and repair and thereafter. In fact, instead of repairing the defects in the PowerShift Transmission, Ford either refused to acknowledge the defects' existence or performed ineffective software upgrades or other repairs that simply masked the defect.

82.    Since 2010, Ford has designed, manufactured, distributed, sold, and leased the Plaintiffs' vehicles. Ford has sold, directly or indirectly, through dealers and other retail outlets, hundreds of thousands of vehicles equipped with the PowerShift Transmission throughout the United States.

83.    Ford had superior and exclusive knowledge of the Transmission defect, and knew or should have known that the defect was not known or reasonably discoverable by Plaintiffs before they purchased or leased the vehicles.

84.    The existence of the Transmission Defect is a material fact that a reasonable consumer would consider when deciding whether to purchase or lease a vehicle equipped with a PowerShift Transmission. Had Plaintiffs known that their vehicles were equipped with defective transmissions, they would not have purchased

or leased the vehicles equipped with the PowerShift Transmission or would have paid less for them.

85.     Despite having actual knowledge of same at the time of sale, Ford never disclosed to the Plaintiffs that there is a safety defect in the Plaintiffs' vehicles. In fact, Ford intentionally and actively concealed the existence of a safety defect in the Plaintiffs' vehicles.

86.     Reasonable consumers, like Plaintiffs, reasonably expect that a vehicle's transmission is safe, will function in a manner that will not pose a safety hazard, and is free from defects. Plaintiffs further reasonably expect that Ford will not sell or lease vehicles with known safety defects, such as the Transmission Defect, and will not disclose any such defects to its consumers when it learns of them. They did not expect Ford to fail to disclose the Transmission Defect to them and to continually deny the defect.

87.     If Plaintiffs had known about these defects at the time of sale or lease, Plaintiffs would not have purchased or leased the vehicles or would have paid less for them.

88.     As a result of their reliance on Defendant's omissions and/or misrepresentations, owners and/or lessees of the vehicles in question suffered an ascertainable loss of money, property, and/or value of their vehicle, including, but not

limited to, the $1,095.00 cost of the optional PowerShift Transmission and out-of-pocket costs related to repairs to the PowerShift Transmission. Additionally, as a result of the Transmission Defect, Plaintiffs were harmed and suffered actual damages in that their vehicle transmissions and related components are substantially certain to fail before their expected useful life has run.

<u>**TOLLING OF THE STATUTES OF LIMITATIONS**</u>

89.    Because the defect is undetectable until it manifests and Ford failed to disclose or intentionally concealed the Transmission Defect, Plaintiffs were not reasonably able to discover the problem until after purchasing the vehicles, despite exercise of due diligence.

90.    Additionally, on information and belief, Ford instructed its authorized dealership employees and technicians to inform Plaintiffs that the manifestations of the Transmission Defect in the PowerShift Transmission was normal, and therefore not a defect as alleged herein.

91.    Plaintiffs had no realistic ability to discern that the PowerShift Transmission in the vehicles in question were defective. Therefore, the discovery rule is applicable to the claims asserted by Plaintiffs.

92.    Plaintiffs are informed and believe and based thereon allege that Ford has known of the Transmission Defect since at least 2010 and has concealed from or

failed to alert owners of the vehicles in question of the defective nature of the PowerShift Transmissions.

93.     Any applicable statute of limitations has therefore been tolled by Defendant's knowledge, active concealment, and denial of the facts alleged herein. Defendant is further stopped from relying on any statute of limitations because of its fraudulent concealment of the Transmission Defect.

## COUNT 1

## BREACH OF EXPRESS WARRANTIES

94.     Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

95.     The subject vehicles constitute "goods" under the Uniform Commercial Code, Sections 2-105(1) and 2A-103(h).

96.     Plaintiffs' purchase of the subject vehicles was accompanied by express warranties as defined in UCC Sections 2-313 and/or 2A-210, written and otherwise offered by Defendant, whereby said warranties were part of the basis of the bargain upon which the Plaintiffs relied.

97.     The vehicles were not as warranted and represented in that the vehicles have the transmission defects or conditions described above, as well as defects or conditions as reflected in the various repair orders, technical service bulletins, special

service messages, recall documents and consumer complaints in possession of Defendant.

98.     As a result of its many defects, said vehicle cannot be reasonably relied on by Plaintiffs for the ordinary purpose of safe, reliable and efficient transportation.

99.     Plaintiffs have provided the Defendants with sufficient opportunities to repair or replace the subject vehicles.

100.    Plaintiffs have reasonably met all obligations and pre-conditions as provided in the express warranty.

101.    Defendant has breached the express warranties by failing to adequately repair the subject vehicles and/or have not repaired the subject vehicles in a timely fashion, and the vehicles remain in a defective condition.

102.    Even though the express warranty provided to Plaintiffs limited Plaintiffs' remedy to repair and/or adjust defective parts, the subject vehicle's defects have rendered the limited warranty ineffective to the extent that the limited repair and/or adjustment of defective parts failed of its essential purpose, pursuant to UCC Section 2-719(2) and/or the above remedy is not the exclusive remedy under UCC Section 2-719(1)(b).

103.    The subject vehicles continue to contain defects which substantially impair the use and value of the vehicles to Plaintiffs.

104. These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to Plaintiffs' acceptance of the subject vehicle.

105. Defendant induced Plaintiffs' acceptance of the subject vehicles by agreeing, by means of the express warranty, to remedy, within a reasonable time, those defects which had not been or could not have been discovered prior to acceptance and, further, by Defendant's failure to disclose the aforesaid transmission defects and/or Defendant's active concealment of same.

106. As a result of the transmission defects, the Plaintiffs have lost faith and confidence in the subject vehicles and the Plaintiffs cannot reasonably rely upon the vehicle for the ordinary purpose of safe, reliable and efficient transportation.

107. As a result of Defendant's breaches of express warranties, Plaintiffs have suffered the damages set forth above.

108. To the extent that Plaintiffs' vehicles are covered by a lease or finance contract, Defendant has a duty to indemnify Plaintiffs and hold Plaintiffs harmless should Plaintiffs prevail on their claims for breach of express warranty.

109. Plaintiffs request that this Honorable Court enter a judgement against Defendant granting the following relief:

a. Declare that acceptance has been properly revoked by Plaintiffs and for damages incurred in revoking acceptance or, alternatively, damages in

whatever amount above $25,000 Plaintiffs are found to be entitled;

b.  A refund of the purchase or lease price paid by Plaintiffs for his or her vehicle;

c.  An order requiring Defendant to indemnify Plaintiffs and hold Plaintiffs harmless with respect to any lease or finance contract covering the subject vehicles;

d.  Incidental, consequential and actual damages;

e.  Costs, interest, and actual attorney fees; and

f.  Such other relief this Court deems just and equitable.

## COUNT II

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

110.  Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

111.  Defendant is a "merchant" with respect to motor vehicles under the Uniform Commercial Code Section 2-104(1).

112.  The subject vehicles were subject to implied warranties of merchantability under UCC Sections 2-314 and/or Section 2A-212.

113.  The subject vehicles were not fit for the ordinary purpose for which such goods are used and/or the vehicles would not pass without objection in the trade for

the product description.

114.    The transmission defects and problems herein before described rendered the subject vehicle unmerchantable.

115.    Defendant failed to adequately remedy the transmission defects in the subject vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this complaint.

116.    As a result of Defendant's breaches of implied warranties, Plaintiffs have suffered the damages set forth above.

117.    To the extent that Plaintiffs' vehicles are covered by a lease or finance contract, Defendant has a duty to indemnify Plaintiffs and hold Plaintiffs harmless should Plaintiffs prevail on their claims for breach of implied warranty.

118.    Plaintiffs request that this Honorable Court enter a judgement against Defendant granting the following relief:

    a.    Declare that acceptance has been properly revoked by Plaintiffs and for damages incurred in revoking acceptance or, alternatively, damages in whatever amount above $25,000 Plaintiffs are found to be entitled;

    b.    A refund of the purchase or lease price paid by Plaintiffs for his or her vehicle;

    c.    An Order requiring Defendant to indemnify Plaintiffs and hold Plaintiffs

harmless with respect to any lease or finance contract covering the subject vehicles;

d.    Incidental, consequential and actual damages;

e.    Costs, interest, and actual attorney fees; and

f.    Such other relief this Court deems just and equitable.

## COUNT III

### REVOCATION OF ACCEPTANCE PURSUANT TO
### MCL 440.2608 AND/OR DAMAGES PURSUANT TO MCL 440.2714(2)

119.   Plaintiffs incorporate by reference all facts and allegation set forth in this Complaint.

120.   The non-conformities described above were latent and not readily discoverable by Plaintiffs upon reasonable inspection and Defendant represented that the aforesaid defects and non conformities would be cured within a reasonable time; further Defendant failed to disclose and in fact actively concealed the defects and non-conformities as set forth above.

121.   Defendants has failed and/or refused to cure the aforesaid non-conformities within a reasonable time.

122.   The non-conformities substantially impair the value of the vehicle to Plaintiffs in that the defects or conditions with the vehicles have rendered the vehicles

dangerous and unpredictable to operate and have caused Plaintiffs to lose faith in their vehicles.

123.   As a result of Defendant's breaches of express and implied warranties, Plaintiffs are entitled to revoke acceptance pursuant to Uniform Commercial Code Sections 2-608 and/or 2A-508 or to damages sufficient to put each Plaintiff in as good a position as he or she would have been had Defendant fully performed.

124.   Plaintiffs offer to tender the subject vehicles in exchange for a refund of the purchase or lease price, together with such incidental and consequential damages allowed by law.

125.   To the extent that Plaintiffs' vehicles are covered by a lease or finance contract, Defendant has a duty to indemnify and hold Plaintiffs harmless should Plaintiffs prevail on their claims for revocation.

126.   Plaintiffs request that this Honorable Court enter a judgement against Defendant granting the following relief:

a.   Declare that acceptance has been properly revoked by Plaintiffs and for damages incurred in revoking acceptance or, alternatively, damages in whatever amount above $25,000 Plaintiffs are found to be entitled;

b.   A refund of the purchase or lease price paid by Plaintiffs for his or her vehicle;

c.      An Order requiring Defendant to indemnify Plaintiffs and hold Plaintiffs harmless with respect to any lease or financial contract covering the subject vehicles;

d.      Incidental, consequential and actual damages;

e.      Costs, interest, and actual attorney fees; and

f.      Such other relief this Court deems just and equitable.

## COUNT IV

## LIABILITY UNDER MAGNUSON-MOSS WARRANTY ACT (15 USC §2301 ET SEQ)

127.   Plaintiffs incorporate by reference all facts and allegations set forth in this complaint.

128.   This Court has jurisdiction to decide claims brought under 15 USC §2301 et seq, by virtue of 15 USC §2310(d)(1)(A).

129.   Plaintiffs are consumers as defined in 15 USC §2301(3).

130.   Defendant is a supplier and warrantor as defined in 15 USC §2301(4)(5).

131.   The subject vehicles are consumer products as defined in 15 USC §2301(6).

132.   The subject vehicles were delivered subject to a written warranty and/or a service contract at those terms are defined in 15 USC 2301(6) and 2301(8),

respectively.

133.   15 USC §2301(a)(1), requires Defendant, as warrantor, to remedy any defect, malfunction or conformance of the subject vehicle within a reasonable time and without charge to Plaintiffs, as defined in 15 USC §2304(d).

134.   In connection with the aforesaid transmission defects, which occurred during the time and mileage parameters of Defendant's written express warranty, Defendant failed to adequately repair same under the warranty within a reasonable time.

135.   15 USC §2310(d)(1) permits Plaintiffs to bring an action against Defendant for any breach of express or implied warranty arising under state law, as well as any violation of the act.

136.   15 USC §2308(a) prohibits Defendant from disclaiming the implied warranty of merchantability and 15 USC §2308(c) renders any attempted disclaimer invalid.

137.   Despite the fact that Plaintiffs have complied with all conditions precedent, Defendant has failed and/or refused to remedy within a reasonable time and without charge, the defects or non-conformities heretofore set forth in this Complaint.

138.   As a result of Defendant's breaches of express and implied warranties,

Defendant's failure to remedy same within a reasonable time and without charge to Plaintiff, and Defendant's other violations of the Act as set forth in this Complaint, Plaintiffs have suffered the damages set forth in this Complaint.

139.   To the extent that Plaintiffs' vehicles are covered by a lease or finance contract, defendant has a duty to indemnify Plaintiffs and hold Plaintiffs harmless should Plaintiffs prevail on their claims for violation of the Magnuson-Moss Warranty Act.

140.   Plaintiffs pray that this Honorable Court enter its Order requiring Defendant to accept return of the subject vehicles and refund Plaintiffs' purchase or lease price, together with taxes, insurance premiums, interest, costs and actual attorney fees as provided by 15 USC §2310(d)(2) or in the alternative, that Plaintiffs be awarded damages in whatever amount above $25,000 Plaintiffs are found to be entitled, plus interest, costs and actual attorney fees.

## COUNT V

### VIOLATION OF MCL 445.901, ET. SEQ.
### (MICHIGAN CONSUMER PROTECTION ACT)

141.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

142.   Plaintiffs are "persons" as defined in the Michigan Consumer Protection

Act, MCL 445.902(d).

143.   The transaction complained of herein constitute "trade or commerce" as defined in the Michigan Consumer Protection Act, MCL 445.902(g).

144.   Defendant engaged in the following unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce.

a.   Representing through its advertising, warranties, and other express representations that the subject vehicles' transmissions had benefits or characteristics that they did not actually have;

b.   Representing that the vehicles' transmissions were of a particular standard or quality when they were not;

c.   Advertising the vehicles and in particular the vehicles' transmissions with the intent not to sell them as advertised and, when so doing, concealing and suppressing facts material to the true characteristics, standards and qualities of the vehicles and transmissions.

d.   At the time of the aforesaid sales and leases, Defendant knew or had reason to know that the vehicle had the defects or non-conformities described above but, failed to disclose this material information to Plaintiffs;

e.   Failing to reveal material facts which tended to mislead Plaintiffs and

which facts could not reasonably have been known by Plaintiffs;

f.  Failing to adequately and properly inform Plaintiff of his rights and remedies with respect to the transactions which are the subject of this Complaint;

g.  Misrepresenting Plaintiffs' rights and/or failing to advise Plaintiffs of remedies with respect to the transactions which are the subject of this Complaint, as hereinbefore alleged;

h.  Attempting to disclaim or limit the implied warranty of merchantability and fitness for use without clearly and conspicuously disclosing same;

i.  Failing to provide promised benefits, both as hereinbefore set forth and as promised or implied by operation of law;

j.  Causing a probability of confusion or of misunderstanding as to Plaintiffs' legal rights, obligations, and/or remedies with respect to the subject transaction;

k.  Entering into a consumer transaction in which the Plaintiffs purportedly waived a right, benefit, or immunity provided by law, without clearly stating the waiver and obtaining Plaintiffs' specific consent to the waiver.

145. Defendant's deceptive practices were specifically designed to induce

Plaintiffs to buy their vehicles with the "upgraded" PowerShift transmission.

146.   The above described conduct violated the Michigan Consumer Protection Act, specifically but not limited to MCLA 445.903 and sub-paragraphs thereunder.

147.   Upon information and belief, the aforesaid violations were not due to a bona fide error, inasmuch as Defendant failed to have any procedures in place designed to prevent the aforesaid violations and, further engaged in the same unfair and deceptive acts or practices in connection with the sale or lease of numerous other vehicles. Further, to this day, Defendant continues to engage in the unlawful practices set forth above.

148.   As a result of Defendant's violations as set forth above, Plaintiffs have suffered a loss within the meaning of the Act, including both monetary and, also, are entitled to statutory damages, equitable relief and attorney fees as provided in the Michigan Consumer Protection Act, specifically, MCL 445.911.

149.   Plaintiffs pray for Judgement against Defendant in whatever amount above $25,000 Plaintiffs are found to be entitled, together with equitable relief, actual and/or statutory damages, interest, costs, and reasonable attorney fees as provided by statute.

## COUNT VI

## UNIFORM COMMERCIAL CODE-UNCONSCIONABILITY

150.    Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

151.    At all times relevant hereto, Defendant has had superior knowledge concerning the above described transmission defect and which defect was known to Defendant prior to the time of Plaintiffs' purchases.

152.    Despite Defendant's superior knowledge, Defendant failed to disclose the defect to Plaintiffs and, further, actively concealed the defect from Plaintiffs.

153.    As a result of Defendant's intentional misconduct, any limitation on Plaintiffs' remedies for breach of express or implied warranties would be unconscionable under Uniform Commercial Code Sections 2-302 and/or 2A-108.

154.    Plaintiffs pray that this Honorable Court strike any contractual limitations on Plaintiffs' remedies as unconscionable and that Plaintiffs be granted such other and further relief as this Court deems appropriate.

## COUNT VII

## FRAUD AND/OR MISREPRESENTATION, INCLUDING FRAUDULENT CONCEALMENT

155.    Plaintiffs, incorporate by reference all facts and allegations set forth in

this complaint.

156.   Defendant repeatedly and publicly represented that its PowerShift Transmissions provide superior function, utility, reliability and other benefits and characteristics, to-wit: "PowerShift with dry-clutch facings and new energy saving electromechanical actuations for clutches and gear shifts saves weight, improves efficiency, increases smoothness, adds durability, and is sealed with law-friction gear lubricant for the life of the vehicle. This transmission requires no regular maintenance.

157.   Defendant further represented that its PowerShift Transmission was an "option" that was worth paying upwards of $1,000 per vehicle over and above the equivalent vehicles equipped with manual transmissions and/or automatic transmissions without PowerShift technology.

158.   Defendant's representations were expected and intended to induce Plaintiffs to purchase the subject vehicles equipped with PowerShift Transmissions and to pay the increased price for same.

159.   Defendant further withheld and continues to withhold information concerning the defects set forth herein, and affirmatively misrepresented and continues to misrepresent the above described symptoms as being "normal," when Defendant knew and continue to know that its representations and omissions are

misleading and, in fact, Defendant intended its representations and omissions to mislead Plaintiffs concerning the nature and existence of the above described transmission defects.

160.   Plaintiffs, reasonably relying on Defendant's representations and omissions were deceived into purchasing the subject vehicles at prices far in excess of the values which would have been assigned to such vehicles had these transmission defects and dangers been disclosed; further, Defendant's representations and omissions deceived Plaintiffs concerning the existence of the defects and Plaintiffs' rights and remedies with respect to the transmission defects.

161.   Had Plaintiffs known of the true nature of the transmission defects described herein, Plaintiffs would not have purchased or leased the vehicles or, alternatively, would not have paid the contract price therefore.

162.   Defendant's representations and omissions as herein alleged were undertaken as an affirmative scheme designed to prevent Plaintiffs from obtaining information about the nature and existence of their claims involving their vehicles' defective PowerShift Transmissions. In furtherance of this scheme, Defendant also represented to Plaintiffs that the symptoms described above were "normal," or were somehow the fault of the Plaintiffs, or that the problems had been repaired. All of these statements to their detriment by failing to submit claims earlier. Furthermore,

Defendant actively discouraged Plaintiffs from discovering the nature and existence of their claims by charging "inspection fees" for warranty work in order to deter Plaintiffs from submitting claims timely.

163. Plaintiffs did not discover, and should not have discovered, that the symptoms they were experiencing with the PowerShift Transmissions were not "normal driving characteristics" as represented by Defendant but, rather, indicia of a defect entitling Plaintiffs to bring claims for relief; Plaintiffs have filed this Complaint within 2 years of when they discovered or should have discovered the existence of their claims.

164. Plaintiffs pray that this Honorable Court enter Judgment against Defendant in whatever amount above $25,000.00 are found to be entitled, together with interest, costs and attorney fees, plus such other and further relief as this Court deems appropriate.

## COUNT VIII

## UNJUST ENRICHMENT

165. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

166. As the intended and expected result of its conscious wrongdoing, Defendant has profited and benefitted from the purchase and leasing of the subject

vehicles by Plaintiffs, in that Defendant sold Plaintiffs defective products for the price of non-defective products.

167.   Defendant has voluntarily accepted and retained these profits and benefits, derived from Plaintiffs, with full knowledge and awareness that, as a result of Defendant's fraud and other conscious and intentional wrongdoing, Plaintiffs were not receiving products of the quality, nature, fitness, or value that had been represented by Defendant or that Plaintiffs, as reasonable consumers, expected.

168.   By virtue of the conscious wrongdoing alleged in this Complaint, Defendant has been unjustly enriched at the expense of the Plaintiffs, who are entitled to in equity, and hereby seek, the disgorgement and restitution of Defendant's wrongful profits, revenue, benefits, to the extent, and in the amount, deemed appropriate by the Court, and such other relief as this Court deems just and proper to remedy Defendant's unjust enrichment.

169.   Plaintiffs pray that this Honorable Court enter Judgment against Defendant for equitable relief, including but not limited to, disgorgement and restitution of Defendant's wrongful profits, revenue, benefits, to the extent, and in the amount, deemed appropriate by the Court, and such other relief as this Court deems just and proper to remedy Defendant's unjust enrichment.

## **DEMAND FOR JURY TRIAL**

170.   Plaintiffs demand a trial by jury of any and all issues in this action so triable.

## **RELIEF REQUESTED**

171.   Plaintiffs requests this Honorable Court enter judgment against Defendant as follows:

a.   Declare that acceptance has been properly revoked by Plaintiffs and for damages incurred in revoking acceptance or, alternatively, damages in whatever amount above $25,000 Plaintiffs are found to be entitled;

b.   A refund of the purchase paid by Plaintiffs for his or her vehicle;

c.   An order requiring Defendant to indemnify Plaintiffs and hold Plaintiffs harmless with respect to any lease or finance contract covering the subject vehicles;

d.   Incidental, consequential and actual damages;

e.   Costs, interest, and actual attorney fees; and

f.   Such other relief this Court deems just and equitable.

Dated: February 28, 2019.

**RESPECTFULLY SUBMITTED:**

DUCK LAW FIRM, L.L.C.

/s/ Kevin R. Duck
KEVIN R. DUCK
LA Bar No. 23043
5040 Ambassador Caffery Pkwy.
Suite 200
Lafayette, LA 70508
Tel: 337-406-1144
Fax: 337-406-1050
Email: krd@ducklawfirm.com
Counsel for PLAINTIFFS